

FILED ___ LODGED
___ RECEIVED

NOV 1 8 2010

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                              DEPUTY

Magistrate Judge Richard Creatura

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>                v.<br><br>DAVID DEVENNY,<br><br>                        Defendant. | CASE NO. *MJ 10 - 5193*<br><br>COMPLAINT for VIOLATION<br><br>Title 18, U.S.C.<br>Section 922(d)(1) & (8) |

BEFORE J. Richard Creatura, United States Magistrate Judge, United States Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1
### (Sale of a Firearm to a Prohibited Person)

On or about February 5, 2010, at Olympia, within the Western District of Washington, DAVID DEVENNY willfully sold an firearm, to wit: one Glock, .40 caliber pistol with serial number 04994DPD for $475 and one Norinco, model SKS, 7.62x39mm caliber rifle with serial number 10449811, to a person, knowing and having reasonable cause to believe, that this person was subject to a court order restraining him from harassing, stalking, and threatening an intimate partner.

All in violation of Title 18, United States Code, Section 922(d)(8).

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Nick Brown

## COUNT 2

### (Sale of a Firearm to a Prohibited Person)

On or about February 5, 2010, at Olympia, within the Western District of Washington, DAVID DEVENNY willfully sold an firearm, to wit: one Wilkerson, 9mm pistol, to a person, knowing and having reasonable cause to believe, that this person had been convicted of a crime punishable by imprisonment for a term exceeding one year.

All in violation of Title 18, United States Code, Section 922(d)(1).

And the complainant states that this Complaint is based on the following information:

1.      I, Julianne Marshall, am a Senior Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the Seattle, Washington, Field Office. I have been an ATF Special Agent for twenty-one years. As such, I have conducted numerous investigations of violations of federal firearms laws. As a result of my training and experience as an ATF Special Agent, I am familiar with federal criminal laws governing firearms. I know that Title 18, United States Code, Section 922(d), prohibits the sale or transfer of firearms to a prohibited person such as a felon or individual with an outstanding domestic violence restraining order.

2.      Beginning in May 2009 through the current date, the ATF has been investigating David DEVENNY for unlawful dealing in firearms, in violation of 18 U.S.C. § 922(a)(1) and the sale of firearms to prohibited persons. This investigation was initiated in May 2009, when Special Agent Wallace received an ATF Multiple Sales (MS) report that showed David DEVENNY had recently purchased nine handguns from one Federal Firearm Licensee (FFL) in Tacoma, Washington.[1] According to the ATF database, DEVENNY had purchased the following firearms in the past two years:

- •      January 29, 2009, four (4) handguns;

---

[1]   Multiple Sale forms are forms that a FFL has to fill out when someone purchases more than one handgun within 5 business days. A copy of this form is sent to ATF after it is completed by the FFL. The information from these forms is entered into a program that ATF uses to trace firearms recovered in crimes.

COMPLAINT/DEVENNY - 2
Case No.

- March 4, 2009, three (3) handguns; and
- May 20, 2009, nine (9) handguns.

3.     Based upon additional research into the State of Washington's database regarding handgun sales by FFL's, Special Agent Wallace discovered that DEVENNY purchased a total of 23 handguns in the past two years from FFLs.  The type of handguns purchased included three (3) Glocks, six (6) Taurus', three (3) Smith & Wesson's, two (2) FEG's, and a few other inexpensive handguns.  All of the guns were purchased in a used condition.[2]

4.     When DEVENNY purchased the firearms from a FFL, he had to complete and sign an ATF form 4473.  The purchaser fills out and signs the first page of this form. The dealer fills out the second and third page of the form.  In the section on the second page, right above the buyer's signature there is a sentence that states "I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of the law (See Instructions for Question 16)."  Therefore, every time DEVENNY filled out and signed this form he acknowledged the wording on the form and was informed of the definition of a engaging in the business of dealing firearms.

5.     In 2007, Special Agent Wallace investigated a Canadian resident who was buying multiple guns from DEVENNY at gun shows. As part of that investigation, Special Agent Wallace made contact with DEVENNY and inquired about the guns that were recovered.

6.     Between October 2009 through November 16, 2010, undercover ATF agents and informants have purchased approximately ten firearms from DEVENNY at various guns shows within the Western District of Washington and at DEVENNY's residence.

---

[2]  Based upon my review of MS records, Special Agent Wallace learned that since May of 2009, DEVENNY has purchased an additional 12 handguns through MS records.  Special Agent Wallace believe that he has purchased other firearms from private parties. Since no records are required for private sales, the exact number of firearms cannot be ascertained.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

7.     On October 17, 2009, Special Agents with ATF conducted an undercover operation at the gun show located at the SW Washington Fairgrounds near Centralia, Washington. Prior to entering the gun show, Special Agent Wallace briefed ATF UC-2, who was working undercover, that DEVENNY may be present at the show.

8.     UC-2 entered the show and saw DEVENNY at a table which had approximately fifteen handguns and eight long guns displayed for sale. DEVENNY was wearing a name tag with the name "Dave" and the words "buy estate" on his tag. Special Agent UC-2 initiated a conversation with DEVENNY. During the conversation, DEVENNY stated that he had sold 14 firearms at the last gun show. DEVENNY also stated that he would be at the next gun show in Puyallup.  DEVENNY explained that he had been buying and selling firearms for approximately seven years and that he makes "decent" money selling guns.

9.     UC-2 asked DEVENNY about the "buy estate" wording on his tag. DEVENNY explained it means that he purchases firearms from estate sales and re-sells them. DEVENNY also pointed out that not all the firearms on his table belonged to him. He stated that a few long guns belonged to a younger male that was present at the table, but to whom UC-2 did not speak. (This person was later identified as D.M.).

10.    After browsing DEVENNY's table, UC-2 bought one Taurus, model 445, .44 caliber revolver with serial number QG548076 for $395. Prior to completion of the sale, DEVENNY asked UC-2 if he was a Washington resident, but did not ask to see any identification. DEVENNY gave UC-2 a receipt for the purchase of the handgun.[3]

11.    During his interaction with DEVENNY, UC-2 mentioned that he was interested in a particular type of gun, a Taurus, model "The Judge" handgun and asked DEVENNY to find one for him. He gave DEVENNY his telephone number.

---

[3] At the Centralia gun shows, a receipt is required with every firearm sale so the person working at the exit can verify that the person walking out the door purchased the firearm they are leaving with.  A receipt of this nature was completed by DEVENNY, but no other paperwork was provided to the UC.

COMPLAINT/DEVENNY - 4
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

12.     On January 14, 2010, David DEVENNY called UC-2 to let him know that he had a Taurus, model "The Judge" handgun for sale DEVENNY told UC-2 that he would sell the handgun for $500 and that he could possibly get a second "Judge" from a friend who is an FFL.  The UC told DEVENNY that he would think about it and get back to him.

13.     On January 15, 2010, DEVENNY called UC-2 again and left a message identifying himself as "Handlebar Dave," which is an alias he has used in the past. The message stated that he could get a second "Judge" and that the first Judge he could sell for $500 and the second he could sell for $525 for a total of $1,025.

14.     On January 21, 2010, UC- 2 returned DEVENNY's call and asked if he still had the Taurus, model "The Judge" handgun for sale.  DEVENNY stated that he still had it and that he would sell it to UC-4 at his residence.  Both parties agreed to meet on January 22 at DEVENNY's residence in Olympia, Washington.

15.     On January 22, 2010, UC-2 went to DEVENNY's residence located at 9610 SE Highway 99, Olympia, Washington  to purchase "The Judge" firearm. During this meeting DEVENNY claimed that he has been selling firearms for approximately eight (8) years and averages about two shows a month.

16.     UC-2 told DEVENNY about a friend who wanted to buy a gun but was not able because he had a fight with his wife and indicated that he had a domestic violence conviction.  UC-2 stated that he had been trying to it taken off his record but didn't have the money to fight it.   UC-2 stated that when his friend went to a gun store, the clerk at the store told him to get a bow and arrow or black powder gun.

17.     When told the above, DEVENNY replied "[o]r buy it from somebody like me that don't give a shit."   DEVENNY explained that he did care to a point but that he didn't ask the question, referring to whether they were prohibited.

18.     DEVENNY also admitted that he was the one that sold the gun that "killed that cop and wounded that -- that lady cop. . ." referring to the murder of Seattle Police Officer Timothy Brenton. DEVENNY stated that he could not say to whom he sold it but

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  that he sold it to somebody at the Puyallup gun show. DEVENNY explained that he had

2  been contacted by the Seattle Police Department who had traced the gun to the original

3  owner and then to DEVENNY. DEVENNY further stated that he did not know to whom

4  he sold the gun because he did not keep records.

5      19.    Before leaving UC-2 asked if he could bring by his friend who had the

6  domestic violence problem. DEVENNY stated that he would leave it up to UC-2 and

7  further stated "what I don't know I don't care about. Uh, I don't want somebody coming

8  down here on their own." Later, DEVENNY stated "it's don't ask don't tell. If I don't

9  know then there's nothing wrong with it." Referring to selling a gun to a prohibited

10 person.

11     20.    UC-2 purchased two firearms from DEVENNY: a Taurus, model The

12 Judge, .45/.410 caliber revolver with serial number CS816896, and a Sig Sauer, .45

13 caliber pistol with serial number G287194. Before leaving, UC-4 again asked

14 DEVENNY about bringing his friend who had the domestic violence conviction to his

15 house to purchase a firearm. DEVENNY replied, "I really don't care, don't ask, don't

16 tell. If I don't know, then there is nothing wrong with it."

17     21.    On February 5, 2010, UC-2 and ATF CI #291 met David DEVENNY at his

18 residence to purchase firearms. CI#291 was posing as UC-2's coworker with the

19 domestic violence conviction. During this conversation DEVENNY told UC-2 and CI#

20 291 that he had recently purchased an additional fifteen (15) firearms and had two deals

21 scheduled to take place the following day. DEVENNY said that he buys almost anything

22 as long as he can make a dollar selling it. DEVENNY also stated that the only gun he

23 "collects" is made by the Wilkerson Firearms company.

24     23.    CI#291 attempted to tell DEVENNY that he got into some trouble, but

25 DEVENNY cut him/her off and stated, "I don't want to hear about it, I am not supposed

26 to know about it, and I don't ask that question. Just as long as you forget where it (the

27 firearm) comes from."

28

COMPLAINT/DEVENNY - 6
Case No.

24.     DEVENNY sold CI#291, two firearms, one Glock, .40 caliber pistol with serial number 04994DPD for $475 and one Norinco, model SKS, 7.62x39mm caliber rifle with serial number 10449811 for $400.  UC-2 purchased one Glock, model 22, .40 caliber pistol with serial number 04597DPD for $475.  DEVENNY was paid $1,350 dollars for the three firearms.

35.     As UC-2 and CI# 291 were leaving, DEVENNY stated that he never really knows what he is "going to have from day to day."  He explained that he bought "seven guns Monday or Tuesday and those four Glock's" and "four or five other guns since you were here last time."  He also stated that he was going to attend "a Gun show in Centralia in about a week or so, which means my inventory will change again."

36.     When UC-2 and CI#291 were leaving , DEVENNY reminded CI#291, "If it comes along that someone catches you and raises hell with you, you don't know where those came from, just keep that in mind. . . I don't need the SWAT team here at the yard again."

37.     Special Agent Wallace queried the serial number of firearms purchased from DEVENNY through the ATF tracing database.  Special Agent Wallace discovered that the two handguns had been purchased from a FFL in January 2010.  The Glock pistol with serial number 04597DPD was purchased on January 29, 2010, and the pistol with serial number 04994DPD was purchased on January 25, 2010.

38.     ATF CI#291 has a Domestic Violence conviction from June 9, 2009, and he/she is a convicted felon from an April 2007 narcotics conviction.  CI#291 does have a domestic violence restraining order as well.  CI #291 would be prohibited from buying a firearm at a Federally licensed dealer if he/she attempted to purchase one.  From the purchases made on February 2010, it is clear that DEVENNY knew CI#291 was prohibited from possessing a firearm by the statements DEVENNY made to the CI#291

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    as they were leaving, but he didn't say the same statement to the UC, who has never told

2    or attempted to tell DEVENNY he is prohibited.[4]

3        39.    On November 14, 2010, ATF UC-4, contacted DEVENNY using his home

4    number. UC-4 told DEVENNY his name and asked if he remembered him. DEVENNY

5    asked if he was the one that bought a couple guns and whose mother had a few for sale

6    (which the UC mentioned during one of their first meetings). UC-4 said that it was and

7    asked DEVENNY if he could come down to his place and purchase a couple more

8    firearms. DEVENNY said that he didn't have many because he "was getting out of the

9    business." UC-4 asked why and DEVENNY explained that he got burned out a little and

10   had a few other things going on now and mentioned that he was going to the Philippines

11   for 3 weeks for personal reasons.

12       40.    DEVENNY asked UC-4 what he was looking to purchase and UC-4 asked

13   about SKS rifles. DEVENNY said he didn't have any because he sold his last one a few

14   gun shows ago. DEVENNY then listed out which firearms he had left for sale, which

15   included a few AR-15, 4 or 5 handguns, .22 caliber rifle made by Daisy, a few Smith &

16   Wesson revolvers in caliber .38 and a 9mm pistol. UC-4 asked what 9mm pistols he had

17   and DEVENNY named off a couple different models including one pistol that was

18   ported. He also mentioned that he had a High Standard revolver and a Dan Wesson

19   revolver. UC-4 and DEVENNY talked about prices for these weapons.

20       41.    UC-4  said that he would probably buy the Dan Wesson and that he has a

21   "buddy" who would be interested in the Smith pistol.   UC-4 asked if they can come

22   down tomorrow (Monday) to buy them and DEVENNY replied that they could come after

23   2:00pm. UC-4 then told DEVENNY that his buddy "has had some problems with the

24   law" and DEVENNY stated "what I don't know can't hurt me." DEVENNY stated "if its

25

26       [4] The domestic violence conviction was not the type of conviction which would prohibit

27   CI#291. However, as noted above, had a domestic violence  restraining order which does prohibit him

28   from possessing a firearm.

COMPLAINT/DEVENNY - 8
Case No.

not volunteered I don't have a problem with it." UC-4 told DEVENNY that when his buddy was young he went to prison for breaking into a house and then his father set him straight. DEVENNY asked if it was the same guy that UC-4 brought down before and the UC-4 said no. UC-4 then told DEVENNY that regarding the prior buddy, although he was convicted of domestic violence, it was really a restraining order, but that it is all behind him now.

42.     DEVENNY then stated that he was looking at his list and saw that he had another 9 mm left. DEVENNY told UC-4 that he could just come down and look at what he had. UC-4 stated that he would come over the next day and DEVENNY stated "bring a lot of money and get my attention." UC-4 replied that he always does. .

43.     On November 15, 2010, UC-4 and CI-282 arrived at DEVENNY's residence at approximately 3:15pm. DEVENNY greeted them and told them that he was going out of business and has been for awhile. He stated that his last show was back in Centralia a couple months ago. UC-4 asked what DEVENNY was going to do with all of his "toys" (meaning guns). DEVENNY said he had already gotten rid of most of his supply. A friend of his had four of his handguns and was going to try and sell them for him.

44.     UC-4 confirmed that DEVENNY didn't have any more SKSs. However, DEVENNY stated that he had a couple of AR-15 in different calibers. DEVENNY also stated that he had about 10,000 rounds of ammunition around his house for those weapons. DEVENNY then stated he was not going to go any more gun shows, but that he knows that the Puyallup gun show is this weekend and there is one in Little Creek the following weekend. DEVENNY said that he has been to a lot of cities selling guns at gun show and lists off about places all around Western Washington and Spokane.

45.     DEVENNY then asked UC-4 and CI #282 which guns they were interested in purchasing. CI#282 mentioned that he was interested in the AR-15s and DEVENNY showed him one, but stated that he paid about $1000.00 for it and couldn't sell it for less. Then DEVENNY told CI #282 that he could hold it for him until he comes back with the

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1   rest of the money (similar to lay-away) and said he has done this before with other buyers.

2   UC-4 then asked DEVENNY if he still had any shotguns left and DEVENNY stated no

3   but that he did have a "sawed off" double barrel shotgun. DEVENNY then quickly added

4   that it is still legal and that the barrel is over 18 inches. He then showed the shotgun to

5   CI#282 and UC-4. DEVENNY also showed them one of the two 12 gauge shotguns he

6   had for home defense but also stated that he will probably sell one of them someday.

7        46.    DEVENNY showed CI#282 a Wilkerson, 9mm with a 30 round magazine.

8   UC-4 asked if he was going to sell it. DEVENNY said that he had another Wilkerson and

9   that he would sell it for $550.00. CI#282 said that he would buy the firearm. DEVENNY

10  explained how CI#282 could turn the 9mm pistol into a  rifle and how he had two

11  magazines for it. DEVENNY gave CI#282 the two magazines, one which was  loaded.

12       47.    Later during the conversation, DEVENNY showed UC-4 the High Standard

13  revolver that he mentioned on the phone.  UC-4 asked CI#282  which one he wanted to

14  buy. UC-4 then reminded CI#282 that he didn't  have a lot of places that he could buy

15  guns and added "it's not like you can go to a gun store and do this legally". DEVENNY

16  then stated "and then you don't know where they came from." UC-4 then told

17  DEVENNY that after CI#282 got in trouble, his dad tried to straighten him out. UC-4

18  then added that CI#282's dad told him to stop hanging around with friends and he

19  wouldn't go to jail anymore and he wouldn't go to prison and get "these felony

20  convictions."

21       48.    UC-4 then asked CI#282 whether he had one or two felony convictions, but

22  then stated that CI#282 is now a straight shooter. DEVENNY told CI#282 that he could

23  sell him both firearms for $850. CI#282 paid  DEVENNY for the firearms and a box of

24  ammunition that DEVENNY added in.   UC-4 told DEVENNY that he did not  have

25  enough money left to get a firearm, and DEVENNY said that he would take the rest of the

26  money UC-4 had for the High Standard revolver.   UC-4 agreed to pay $310 for the High

27  Standard.

28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

49.     As UC-4 and CI#282 were getting ready to leave, DEVENNY talked about how to store a firearm in a vehicle. DEVENNY then told CI#282 "in your case, it (a firearm) should not even be in car with you". And then he said that if you are a felon (and the CI says "yes") and you have a gun with you, you are in "deep shit." UC-4 asked DEVENNY how easy it would be for CI#282 to get his felony convictions taken off his record. DEVENNY stated that CI#282 could go through the courts, but having something taken off his records depends on the severity of what he was convicted of.

50.     UC-4 reminded DEVENNY about the other guy that he brought down before and how that person had a domestic violence conviction and a restraining order. DEVENNY stated that a restraining order these days is just like a felony until its taken care of.  UC-4 then added that this person (meaning CI#282) only has two felony convictions. DEVENNY then said that he probably can get it off his record if he hires an attorney.

52.     CI-282 has multiple felony convictions, including a conviction for possessing stolen property and a firearm offense.

//

//

//

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1    53.    Based on the above facts, I respectfully submit that there is probable cause

2 to believe that David DEVENNY did knowingly and intentionally violate Title 18,

3 United States Code, Section 922(d)(1) and (8).

4

5    JULIANNE MARSHALL, Complainant

6    Special Agent, Bureau of Alcohol,
     Tobacco, Firearms and Explosives

7

8    Based on the Complaint and Affidavit sworn to before me, and subscribed in my

9 presence, the Court hereby finds that there is probable cause to believe that  DAVID

10 DEVENNY committed the offense set forth in the Complaint.

11    Dated this _____ day of November, 2010.

12

13

14    RICHARD CREATURA

15    United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT/DEVENNY - 12
Case No.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970